**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONELL FREEMAN, | : |
| Plaintiff, | : |
| | : Civ. No. 20-13341 (KM) (ESK) |
| v. | : |
| | : |
| UNITED STATES OF AMERICA, et al., | : **OPINION** |
| | : |
| Defendants. | : |

**KEVIN MCNULTY, U.S.D.J.**

Pro se Plaintiff Donell Freeman is a state prisoner at Northern State Prison in Newark, New Jersey (NSP). He originally filed a complaint against then-President Trump and the United States alleging various civil rights violations related to Plaintiff's having contracted Covid-19 in 2020 and seeking to represent all similarly-situated NSP inmates as a class. (DE 1.) I previously granted Plaintiff's application for *in forma pauperis* (IFP) status and dismissed Plaintiff's initial complaint without prejudice after screening pursuant to the Prison Litigation Reform Act ("PLRA"). (DE 3.) Plaintiff has now moved for leave to file an amended complaint (DE 5), which I will grant, and has filed an amended complaint (DE 6), which I have now screened and will dismiss, again without prejudice.

I.    **BACKGROUND**

Plaintiff suffers from chronic asthma and bronchitis. (DE 6 at 5, 14.) During the beginning of the Covid-19 pandemic between February and April 2020, he and other inmates were forced to "clean covid-19 vans…with blood [and] mucus," referring to vans transporting covid-19-positive inmates to the hospital, with only gloves and non-N95 masks as personal protective equipment (PPE). (*Id.* at 4-5.) While waiting for prison-issued masks, inmates made their own. (*Id.* at 5.) In response, officials confiscated them. (Id.) In response to grievances, "Sergeant Mack, Sergeant Pitman, and other official[s]" informed Plaintiff "that Assistant Superintendent Crothers had orders to have [inmates] lock[ed] up for refusing to perform

dut[ies]."[1] (*Id.* at 5, ¶ 6.) Inmates cleaning the vans were, however, provided with non-95 masks. (*Id.* at 14.)[2] Social distancing was impossible in Plaintiff's unit. (*Id.* at 5.)

About a month later, still without additional PPE, Plaintiff developed symptoms consistent with Covid-19: weakness, diarrhea, difficulty breathing, and fatigue. (*Id.* at 15.) Plaintiff was treated for cold symptoms, but no testing was available to confirm the diagnosis. (*Id.* at 4.) Plaintiff was quarantined for four months, where he "almost die[d]." (DE 6 at 4-5.)

In my prior opinion, I dismissed the action with prejudice against President Trump and the United States and denied Plaintiff's request to represent all NSP inmates as a class,[3] but permitted Plaintiff to file an amended complaint. (*Id.*) Plaintiff subsequently filed a motion for leave to file an amended complaint, followed by the Amended Complaint itself, which is also subject to screening pursuant to the PLRA (DEs 5, 6). The Amended Complaint incorporates the initial Complaint, adds additional allegations, and names the New Jersey Department of Corrections (DOC), Commissioner Hicks, Administrator Nogan, Assistant Superintendent Crothers, and several John Does as Defendants. (DE 6 at 4, ¶ 6.) I will grant the motion to amend[4] but dismiss the Amended Complaint for the reasons below.

## II.    LEGAL STANDARD

Under the PLRA, district courts must review complaints in those civil actions in which a plaintiff is proceeding IFP. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to

---

[1] I note that Plaintiff does not name Sergeants Mack and Pitman as defendants.

[2] Plaintiff mentions this in the initial Complaint (explicitly incorporated into the Amended Complaint), but not the body of the Amended Complaint.

[3] To the extent that the Amended Complaint seeks "justice for those who died," (DE 3 at 7), I interpret this is as a duplicate request for Plaintiff to represent other inmates, and deny that request for the reasons stated in my first opinion.

[4] As Plaintiff had already been granted leave to amend within 30 days, it appears that Plaintiff proceeded by motion to amend because that time period had already passed. Nevertheless, the Third Circuit has adopted a liberal approach to amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir. 1990). Because the delay was brief, the amendment will be permitted. *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001) (holding that mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay); *cf Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir. 1993) (finding that a three-year lapse between the filing of the complaint and the proposed amendment was "unreasonable" delay when plaintiff had previous opportunities to amend).

*sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.  DISCUSSION

Plaintiff appears to allege Defendants' personal involvement in an Eighth Amendment violation, but neither the involvement nor the violation is sufficiently pled. As an initial matter, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's § 1983 claims against the DOC are dismissed with prejudice. For the same reason, though Plaintiff does not delineate between the individual defendants' official and personal capacities, the individual defendants in their official capacities are dismissed with prejudice.

Plaintiff's claims against the individual defendants in their personal capacities also fall short. Liability in a § 1983 action, including supervisory liability, must be predicated upon personal involvement, not *respondeat superior. Brown v. Deparlos*, 492 F. App'x 211, 214–15 (3d Cir. 2012); *Tindell v. Beard*, 351 F. App'x 591, 595 (3d Cir. 2009). There are two theories of supervisory liability applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.' " *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

The Third Circuit, in a decision that binds this Court, has already held that exposure to Covid-19 and the government's failure to eliminate an inmate's risk of exposure are not *per se*

unconstitutional. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020). The *Hope* panel went farther still, holding that even the lack of "effective containment measures" did not establish deliberate indifference. Other courts have held similarly. *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at \*4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at \* (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at \*6 (W.D. Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures ... to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation"). Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." *See Wylie*, 2021 WL 261280, at \*6.

Plaintiff claims that Hicks, Nogan, and Assistant Superintendent Crothers "order[ed] it knowing risk." By this, he presumably means that they ordered Plaintiff, who had conditions placing him at heightened risk if he contracted Covid-19, to clean the van with insufficient PPE (DE 6 at 3, ¶ 4(d)). These claims are too vague to survive screening. *Aruanno v. Johnson*, 683 F. App'x 172, 175 (3d Cir. 2017) (plaintiff's allegations that defendant smoked cigarettes near his cell, which "sickened" plaintiff, is too vague to establish a constitutional violation). There are no allegations specific to any John Doe Defendants. Even read liberally, the only allegation providing any detail is that Crothers ordered inmates "lock[ed] up for refusing to perform

dut[ies]," forcing inmates into an unconscionable choice: risk contracting Covid-19 or submit to punitive isolation. (DE 6 at 5.)

However, other than fleeting mentions of grievances, Plaintiff does not allege the source of Crothers' knowledge of Plaintiff's particular vulnerability to Covid-19, that Plaintiff lacked PPE, that Crothers' instruction related specifically to Plaintiff cleaning the Covid-19 van, that cleaning the van (which was empty) posed any particular risk to Plaintiff, or that cleaning the van caused Plaintiff to contract Covid-19. *See Dominguez v. Governor of Pennsylvania*, 574 F. App'x 63, 65 (3d Cir. 2014) (the mere existence of grievances alone "generally does not amount to personal involvement" by the official). But even accepting that Crothers had personal knowledge of Plaintiff's unique vulnerabilities and the risk the van cleaning posed, Plaintiff concedes that he *was* given PPE, gloves and a non-N95 mask (DE 6 at 14), contradicting any allegation that Crothers (or anyone else) disregarded a risk to Plaintiff's safety.[5] *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (To establish deliberate indifference, a plaintiff must show the defendant knew of and disregarded an excessive risk to his health and safety) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Moreover, Plaintiff does not allege that he was denied medical care, before or after quarantine.

Accordingly, Plaintiff has failed to state a claim against any defendant. However, because leave to amend is generally freely granted, and because Plaintiff could plausibly state facts which would support a § 1983 claim, I will afford Plaintiff a final opportunity to amend his complaint within 60 days.

---

[5] Notably, Plaintiff does not allege that there were any N95 masks or other PPE available. The failure to provide Plaintiff with a non-N95 mask occurred during a worldwide PPE shortage. *See* "FAQs on Shortages of Surgical Masks and Gowns During the COVID-19 Pandemic," June 19, 2020, https://www.fda.gov/medical-devices/ personal-protective-equipment-infection-control/faqs-shortages-surgical-masks-and-gowns-during-covid-19-pandemic; "Shortage of personal protective equipment endangering health workers worldwide," March 3, 2020, https://www.who.int/news/item/03-03-2020-shortage-of-personal-protective-equipment-endangering-health-workers-worldwide.

IV.     **CONCLUSION**

For the reasons above, Plaintiff's motion to amend (DE 5) is **GRANTED**. However, after screening, the Amended Complaint (DE 6) is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

/s/ Kevin McNulty

_____

KEVIN MCNULTY
United States District Judge

7